## MIDLAND OIL CO. et al. v. TURNER.

(Circuit Court of Appeals, Eighth Circuit. April 11, 1910.)

### No. 3,068.

1. INDIANS (§ 16*)—INDIAN LANDS—LEASES—APPROVAL OF ASSIGNMENT BY SECRETARY OF INTERIOR.

The statutory requirement that leases made by Indian allottees of the Cherokee and other civilized tribes in the Indian Territory should be subject to approval by the Secretary of the Interior before being effective conferred on the Secretary only the power of approval or disapproval, and gave him no authority to initiate or make a lease, or to change or ignore its provisions, and his approval of an assignment of a lease, made without the consent of the lessor, in direct violation of its conditions, did not validate such assignment.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 16.*]

2. INDIANS (§ 16*)—INDIAN LANDS—SUIT TO ENJOIN TRESPASS—DEFENSES—VOID ASSIGNMENT OF OIL LEASE.

Where an allottee of Indian lands made an oil lease thereon, providing that it should not be assignable without her consent, strangers to such lease, who went upon the land, drilled wells, and produced oil therefrom, acquired no right by the subsequent assignment to them of the lease without the lessor's consent; nor was the assignment validated by an approval by the Secretary of the Interior over the lessor's protest, and a court of equity properly enjoined the trespassers from further operating their wells, and canceled the lease, where the ·lessee, who was made a party, made no claim thereunder.

. [Ed. Note.—For other cases, see Indians, Dec. Dig. § 16.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3.** MINES AND MINERALS (§ 51*)—RECOVERY OF OIL LAND FROM, TRESPASSERS—RECEIVERS—EXPENSE OF OPERATING WELLS.

Where oil wells, drilled by defendants as trespassers on the land of complainant, pending a suit to recover possession, were operated by a receiver, who used defendant's\tools and machinery, and the oil produced was awarded to complainant, but defendants were allowed to keep the proceeds of that produced by them, less a royalty, and to remove their tools and machinery, they were entitled to fair rental for their use by the receiver, and were not chargeable with any part of his compensation for operating the wells.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 51.*]

Appeal from the Circuit Court of the United States for the Eastern District of Oklahoma.

Suit in equity by Susan Turner, by J. T. Parks, her guardian and next friend, against the Midland Oil Company, T. N. Barnsdall, and William J. Seep. Decree for complainant (167 Fed. 646), and defendants appeal. Modified and affirmed.

Edgar Smith and Eugene Mackey (Zevely, Givens & Smith and Cornelius D. Scully, on the brief), for appellants.

Kenneth S. Murchison (M. C. Reville and A. A. Davidson, on the brief), for appellee.

Before HOOK and ADAMS, Circuit Judges, and AMIDON, District Judge.

HOOK, Circuit Judge. This was a suit by Susan Turner, a minor, by her guardian, to enjoin William J. Seep, T. N. Barnsdall, and the Midland Oil Company from trespassing on her lands in Oklahoma, and for other relief. There was a decree for complainant, and defendants appealed.

The complainant, as a member of the Cherokee Nation of Indians, received an allotment from the tribal lands. Her guardian, acting under the orders of a court of probate in what was then Indian Territory, executed, upon payment of a bonus, an oil and gas lease to the Midland Oil Company. By its terms the lease was not to be effective until approved by the Secretary of the Interior and the execution by the lessee within 60 days thereafter of a bond as prescribed by the regulations of the department. There was also a provision against the assignment or transfer of the lease, or of any interest under it, without the written consent of the lessor and the Secretary of the Interior, and that such assignment or transfer should be void; also that a violation of any of the provisions of the lease, or a failure for 60 days to pay the stipulated monthly royalty, gave the lessor the right to avoid the lease and cause the same to be annulled, when all the rights of the lessee should cease without further proceedings. The lease was executed November 16, 1905. The Midland Oil Company never took possession of the premises. In December, 1905, without advising the complainant, or her guardian, and without awaiting the approval of the lease, or the giving of the prescribed bond, the defendants Seep and Barnsdall, who were strangers to the transaction so far as complainant was concerned, took possession. They at once commenced the drilling of wells, and

then the extraction of oil. The guardian first learned of this on January 7, 1907, more than a year afterwards. The lease provided for the payment monthly of a royalty of 10 per cent. of the value of the oil extracted, and under the law the payments should have been made to the Indian agent for the benefit of the complainant. Seep and Barnsdall commenced taking oil from the land in March, 1906, and at the time the suit was brought, a year later, it amounted in value to $8,134.73; but no royalty was paid or tendered until July 25, 1907. March 7, 1907, the guardian brought this suit under the authority of an order of the court of probate. Afterwards, April 29, 1907, the Midland Oil Company assigned the lease to Seep and Barnsdall, without the consent of complainant or her guardian. On June 18, 1907, the lease and assignment were approved by an Assistant Secretary of the Interior against the protest of the guardian. By the decree of the trial court Seep and Barnsdall were given the oil extracted before suit was brought, less 10 per cent. of the value, equaling the reserved royalty, which was awarded complainant, and they were allowed to remove their tools, machinery, and structures. The receiver, who had been appointed, was directed to deliver the premises to complainant, and defendants were enjoined from interfering with her possession and enjoyment.

The assignment of the lease was contrary to the express prohibition contained in it, and was void. It conferred no rights whatever on the assignees. We assume, without further consideration, that the approval of the assignment by the Assistant Secretary of the Interior had the same effect as if done by the Secretary himself. But that does not help matters. The power of the Secretary with respect to oil and gas leases of Cherokee allottees was that of approval or disapproval. He could veto, but could not initiate or make, a lease. He might refuse to approve because of the presence of a provision, and thereby render the lease ineffective; but he could not strike out a part, and have the remainder continue in force, without the concurrence of the lessor. If a lease were made to A., with a prohibition against transfer, the Secretary could not lawfully nullify the prohibition by approving a transfer to B. The land, subject to specific restrictions imposed by Congress, belonged to the Indian, and whether a lease should be made at all, and, if so, upon what terms, rested in the first place with the guardian and the court of probate.

It is urged that a court of equity will not decree a forfeiture. This rule has substantial exceptions; but it cannot in any event apply to the assignment, for that instrument never had a valid beginning and there was nothing about it to forfeit. Seep and Barnsdall were trespassers. The inquiry, therefore, turns to the status of the lease to the Midland Oil Company. It may be admitted that a void assignment does not destroy a valid lease, but the company was made a defendant, and it is asking nothing for itself by pleading or proof. Barnsdall, who organized the company and acted for it in obtaining leases, testified, and he was not contradicted, that the lease here was taken in the name of the company by mistake; that it was intended for Seep, the witness to be also interested; that the company had no interest in it, and made the assignment because it did not wish to keep something

that did not belong to it. There is no claim that the complainant or her guardian was aware of this. So to hold the lease valid in the hands of the company would either give it something it does not ask or make a new contract for the parties, by establishing the company as a naked trustee for Seep and Barnsdall, and thereby evade the express provision against any transfer, direct or indirect, of the leasehold interest. Though the company, having executed the lease, might be held to it at complainant's option, yet, if it repudiates it as being for itself, the complainant may take it at its word and end the contract relation. The company disavows personal interest in the lease. Seep and Barnsdall cannot, against complainant's will, obtrude themselves as lessees or assignees, and complainant accepts the situation and retakes possession of her property. This was the theory of the trial court, and we think it is right.

It is urged that the terms of the lease are fair, and the complainant is not injured by the assignment. But complainant did not contract with Seep and Barnsdall, and no court has power to impose a contract on a person against his express stipulation. It is as much a natural right of a person to select those with whom he contracts as it is to determine the character of his engagement and the terms and conditions by which he will be bound. As was said in National Bank v. Hall, 101 U. S. 43, 50, 25 L. Ed. 822:

"In making a contract, parties are as important an element as the terms with reference to the subject-matter. Mutual assent as to both is alike necessary."

The hardship which it is said will follow the decree results directly from the negligence of the defendants or their careless disregard of the rights of the complainant. Little attention seems to have been paid to a prudent and orderly procedure in such matters, or for that matter to any duties or obligations to the owner of the property.

The trial court preserved to the individual defendants their tools, machinery, etc. The receiver has used them in operating the wells, and the oil he extracted was awarded complainant. We think a fair compensation for the use of the tools, machinery, etc., should be given them; also that they should not be charged with any part of the compensation of the receiver for operating the wells, the exclusive benefit of which accrues to complainant.

The decree should be modified accordingly, and the cause is remanded to the Circuit Court for that purpose. As so modified, the decree is affirmed.