## DIXON v. OWEN.

No. 2573. Opinion Filed May 6, 1913.

(132 Pac. 351.)

INDIANS—Oil and Gas Lease—Construction. A departmental oil and gas lease of a citizen of the Cherokee Nation contained the provision that the lessee should drill at least one well within twelve months, and that on failure to do so, on notice and proof of default, the Secretary of the Interior at his discretion might declare the same null and void, and the further provision that the lessee agreed that the indenture should in all respects be subject to the rules and regulations theretofore or thereafter prescribed by the secretary relative to oil and gas leases in the Cherokee Nation. Prior to the approval of said lease, the

Secretary of the Interior prescribed a rule providing that lessees, on making certain payments, should have the privilege of delay of operation for a period not to exceed five years from a date fixed. Held, that the said regulation was a valid exercise of authority by the said Secretary of the Interior, became a part of the lease, and was binding on both parties.

(Syllabus by the Court.)

*Error from District Court, Washington County;*
*T. L. Brown, Judge.*

Action by Owen Owen against Hugh M. Dixon. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions.

*Veasey & Rowland* and *J. D. Talbott,* for plaintiff in error.

*George & Campbell,* for defendant in error.

DUNN, J. This case presents error from the district court of Washington county, wherein it was filed by Owen Owen, defendant in error, for the purpose of canceling and removing as a cloud upon his title the oil and gas lease referred to in the following agreed statement:

"It is hereby stipulated and agreed between Messrs. Veasey & Rowland, attorneys of record for Hugh M. Dixon, plaintiff in error, and Messrs. George, Campbell & Ray, attorneys of record for Owen Owen, defendant in error, in the above-entitled matter, that the transcript of the records and proceedings of said action discloses and shows the following facts, to wit: First. That defendant in error, Owen Owen, is the owner and in the possession of the following described real estate situate and being in Washington county, Okla., to wit: The W. ½ of S. W. ¼ of S E. ¼ of section 27, and S. W. ¼ of N. E. ¼ of N. E. ¼ of section 34, all in township 29, range 13, containing 30 acres more or less. Second. That said defendant in error, Owen Owen, derived his title from one George Gunter by general warranty deed, executed and delivered on August 11, 1903, and that all of the restrictions upon the alienation of said land had been removed by operation of law. Third. That said defendant in error took title to said real estate subject to an oil and gas

mining lease theretofore executed and delivered to said plaintiff in error Hugh M. Dixon, by said George Gunter on May 2, 1906, and that said lease was approved by the Secretary of the Interior on August 16, 1907, and the bond given by plaintiff in error to secure the faithful performance of the covenants, agreements, and stipulations in said lease contained by said plaintiff in error, as required by the regulations of the Department of the Interior was approved on August 16, 1907. A true copy of said lease is contained in the record, pages 47 to 56, inclusive. Fourth. That under the terms and conditions of said lease said plaintiff in error was obligated to drill at least one well on the land covered by said lease within twelve months from the date of the approval of said bond, to wit, within twelve months from August 16, 1907, under penalty of forfeiture. Fifth. That no well was drilled, upon said real estate by said plaintiff in error, or by any one for him, within said twelve months period, or had been drilled at the time of the bringing of this action. Sixth. That said plaintiff in error offered to pay said defendant in error the sum of $1 per acre as rental upon said real estate in lieu of said development required to be done by the terms of said lease within the time provided for by the regulations of the Department of the Interior, under regulation hereinafter set out. Seventh. That said plaintiff in error has offered to pay said defendant in error all the advanced royalties provided for in said lease within the time specified therein. Eighth. That said defendant in error refused to accept said $1 per acre as rental so offered by said plaintiff in error, and also refused to accept said advance royalty so offered by said plaintiff in error. Ninth. That said defendant in error notified said plaintiff in error in writing, prior to the bringing of this action, and he elected to declare said lease canceled, annulled, and abrogated, and all of the rights of said plaintiff in error therein and thereunder to be at an end, for the reason that said plaintiff in error had failed to drill any well upon said real estate. That said plaintiff in error refused to recognize the right of the defendant in error to elect to cancel said lease, for the reason (a) that he (said plaintiff in error) had offered to pay the $1 per acre rental for the privilege of delaying development, as provided for in the rules and regulations of the Secretary of the Interior hereinafter set out, which was refused by defendant in error, and (b) because under the terms and con-

ditions of said lease only the Secretary of the Interior could declare said lease forfeited because of the failure of plaintiff in error to develop said real estate for oil and gas. Eleventh. That the foregoing facts were developed and proven at the trial of this case in said district court by statements and admissions in open court by the parties and attorneys of record, and by testimony and evidence introduced by the parties.

"It is therefore agreed between the attorneys for plaintiff in error and defendant in error, in order that the issues and questions involved in this action may be submitted to the Supreme Court of Oklahoma in a concise and definite form, and for the purpose of eliminating all questions that are in fact admitted and conceded by both parties hereto, that the foregoing statement of facts are the only facts necessary to a full and complete determination of the issues and questions in this action, and were all of the facts and issues considered and passed upon by the trial court. And it is further agreed and stipulated between the parties hereto that the following questions of law are the only questions involved in the action to be decided by the Supreme Court of Oklahoma, under said statement of facts, and also all of the questions considered and passed upon by the trial court: First. As a matter of law, does the following regulation of the Secretary of the Interior, promulgated after the execution of said lease, but before its approval by the Secretary of the Interior, become a part of the stipulations and conditions of said lease and give the lessee the right to delay development of said lease at his option, by paying or tendering to the lessor, or his grantee, the $1 per acre rental, as provided in said regulation, to wit: 'Regulation promulgated by the Secretary of the Interior May 22, 1906. Lessees whose leases have heretofore been approved and whose leases may hereafter be approved shall have the privilege of delaying operations for a period not exceeding five years from the date of this amendment, except where bonds are approved subsequent to the date hereof, in which event the period shall run from the date of the approval of the bond by paying to the United States Indian Agent, Union Agency, for the use and benefit of the respective lessors, in addition to the required annual advanced royalty, the sum of $1 per acre per annum for each leased tract remaining undeveloped.' Second. If the court holds that said regulation, permitting the lessee to delay development by the payment of a rental of $1

per acre per year, cannot be read into and made a part of a lease executed prior to the promulgation of said regulation without the consent of the lessor or his grantee, then as a matter of law, under the terms, conditions, and stipulation of said lease, has the lessor or his grantee the legal right to elect to cancel and annul said lease and forfeit all the rights and privileges of the lessee therein and thereunder for and on account of the failure of the lessee to develop said real estate for oil and gas? The above are the only questions of law involved in this action which were considered and passed upon by the trial court. The trial court, in rendering its decision on said question of law, stated that in the opinion of the court said regulation could not be read into and construed as a condition and stipulation of said lease without the consent and over the objection of the lessor or his grantee. And the court further decided in its opinion that the lessor or his grantee in said lease had the right to elect to annul and to cancel said lease under the terms and conditions therein expressed, for failure of said lessee to drill a well on said real estate within twelve months from the date of approval of said bond."

The lease in question, as set out in the abstract of plaintiff in error, contains the following provision necessary to be noticed:

"The party of the second part further covenants and agrees to exercise diligence in the sinking of wells for oil and natural gas on the lands covered by this lease, and to drill at least one well thereon within twelve months from the date of the approval of the bond by the Secretary of the Interior, and should the party of the second part fail, neglect or refuse to drill at least one well within the time stated, this lease may, in the discretion of the Secretary, be declared null and void, with due notice to the lessee and proof of the default. * * * And the party of the second part agrees that this indenture of lease shall in all respects be subject to the rules and regulations heretofore or that may hereafter be lawfully prescribed by the Secretary of the Interior relative to oil and gas leases in the Cherokee Nation."

Under these provisions it is the contention of the defendant that the Indian lessor did not have the right to cancel the lease on failure to drill, because that right was specifically

vested in the Secretary of the Interior, and that the view would not be tolerable that some other person could also exercise the specific right therein delegated, as the plain language of the contract provided and prescribed the one who was to exercise it and the precise condition under which the power could be called into execution. It is apparent, however, that this question need not be decided if, upon the whole, that provision of the lease, wherein the party of the second part agrees that the same shall be subject to the rules and regulations which have heretofore or that may hereafter be lawfully prescribed by the Secretary of the Interior relative thereto, is effective to incorporate as a part of the lease the regulation promulgated by the Secretary of the Interior on May 22, 1906. The lease was dated May 2, 1906, and was approved by the Secretary of the Interior August 16, 1907. So it will be seen at the time of the approval of the lease the provision in question was one of the existing rules of the department. It is the contention of counsel for plaintiff that, so far as he is concerned, all of his rights are expressed in the lease; that there is nothing in the lease which binds him to abide by any rule or regulation which may be prescribed by the Secretary; that the provisions relating to the regulation of the Secretary theretofore or thereafter prescribed by him relate exclusively to the lessee and not to the lessor and relies on the cases of *Turner v. Seep* (C. C.) 167 Fed. 646, and *Midland Oil Co. v. Turner*, 179 Fed. 74, 102 C. C. A. 368, to support the proposition that the Secretary of the Interior was without authority to do more than approve or disapprove the lease submitted. The latter case is the decision of the former on appeal by the Circuit Court of Appeals of the Eighth Circuit and appears to hold that under a lease which provided against the assignment or transfer without the written consent of the lessor and the Secretary of the Interior, in direct violation of such condition, approved one, it was void and conferred no rights upon assignees. That the same principle involved in the assignment of the lease in that case is involved in the regu-

lation attempting to extend the time for the drilling of the
first well, and that, unless the lessor consented to the exten-
sion, it could not have any legal force or effect. Also that
the provision of the lease giving lessor the right to avoid the
indenture in the event of a violation of its covenants or a fail-
ure for a period of 60 days to pay the stipulated monthly roy-
alty was a controlling provision or at least sufficient to au-
thorize him to exercise the right referred to in the paragraph
conferring upon the Secretary alone the right to declare null
and void the lease on failure to drill.

Section 72 of the Act of Congress approved July 1, 1902,
c. 1375, 32 St. at L. 716, among other things provides that:

"Cherokee citizens may rent their allotments  *  *  *
for mineral purposes  *  *  *  with the approval of the Sec-
retary of the Interior and not otherwise."

This limitation and authority necessarily placed a restric-
tion upon the power and authority of the owners of these lands
to lease for the purposes mentioned to just such terms as would
meet the approval of the Secretary. They took their lands and
held them with this limitation upon their power to contract.

The lease here before us is what is commonly known as a
departmental lease, of which it is common knowledge thous-
ands have been made. The lessor, on tendering a lease to a
lessee, was required to limit its terms to just such as the
Secretary would approve, and the lessee was bound, if he en-
tered into the agreement, to accept it under the same conditions.
Among the conditions to be noted in the lease before us is one
that the lessee will exercise diligence and drill at least one well
within twelve months from the date of the approval of the bond
by the Secretary, and also reserved to the Secretary, in his dis-
cretion, the right, on due notice to the lessee and proof of de-
fault, to declare the same null and void. This appears to
be a reasonable construction of the language used, although
transposed, for certainly notice and proof of default ought to
be held to precede rather than to follow the cancellation. But
it is to be noticed that the cancellation, even after notice and

proof of default, does not necessarily follow, but is in the discretion of the Secretary, which must be presumed to be exercised with the intent to benefit the lessor. The people occupying these lands live in a region rich in deposits of oil and gas, and it was the purpose of the lease, as originally here written, to enable them to have their lands exploited for those minerals and to enjoy the increment therefrom. No doubt thousands of leases were executed in good faith, on the part of both lessors and lessees, to be drilled within the twelve-month period, but in the course of time the Secretary was called upon and flooded with applications for the exercise of the discretion contained in this provision. The lessees, in many instances being unable to drill within the twelve months provided for, asked for favorable action at the hands of the Secretary, the lessors at the same time demanding a cancellation.

Under these circumstances the Secretary, doubtless believing that a general blanket regulation exercising the discretion here vested in him would inure to and be for the benefit of the lessors, passed the one under date of May 22, 1906, here called into question, providing for the delay of operations by the lessees for a period not to exceed five years thereafter. The finding of gas or oil upon any of the lands of these lessors is always accompanied by more or less uncertainty. Under this provision doubtless many people were prompted to lease lands, and to pay to the lessors the advance royalty and $1 per acre per annum, and thereby secure an income to the owners of land which in many instances ultimate development showed contained no mineral; the lessees having had the advantage of an opportunity during this time to prepare to drill and the lessor receiving the compensation therefor. Doubtless such extension of time operated in specific cases to the detriment of the lessor, but unquestionably the Secretary of the Interior believed that in the aggregate it would be for the benefit of these people, whose property and its administration in this regard was placed in his hands. The lease before us and thereafter as amended presents just the character of lease

that the lessor must be held to have intended to tender to the lessee, for he could, because of his restrictions, tender only the character of lease which would be approved by the Secretary. The foundation for his right to lease at all is based upon that proposition, and the language of the lease that the lessee agrees that this indenture shall be subject to the rules and regulations heretofore or hereafter prescribed by the Secretary merely puts them both on the same plane.

Nor in our judgment does the general clause vesting in the lessor the right to invoke cancellation for failure to comply with the terms of the indenture control this special clause; the rule being uniform that specific acts or clauses govern and control over general ones.

Under these circumstances the judgment of the trial court must be reversed and the cause remanded, with instructions to set the same aside.

All the Justices concur.