TURNER v. SEEP et al.

(Circuit Court, E. D. Oklahoma. February 10. 1909.)

No. 233.

1. INDIANS (§ 16\*)—APPROVAL OF LEASES—POWERS AND DUTIES OF ASSISTANT SECRETARY OF THE INTERIOR—DELEGATION.

Under Rev. St. § 439 (U. S. Comp. St. 1901, p. 249), which provides that "the Assistant Secretary of the Interior shall perform such duties in the Department of the Interior as shall be prescribed by the Secretary or may be required by law," the Secretary may delegate to the Assistant Secretary authority to approve leases of Indian lands and assignments

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

thereof, and, so long as such authority remains unrevoked, the approval of the Assistant Secretary is equivalent to that of the Secretary.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 45; Dec. Dig. § 16.*]

2. INDIANS (§ 16*)—LANDS—ASSIGNMENT OF OIL LEASE.

Where an oil and gas lease executed by an Indian in the Indian Territory on a form prescribed by the Interior Department expressly provided that no sublease or assignment of any interest therein could be made without the written consent of the lessor and the Secretary of the Interior, and any attempted assignment or transfer without such consent should be void, a subsequent regulation of the department which contained no requirement of the lessor's consent in such cases could not validate an assignment of such lease made without the lessor's consent.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 45; Dec. Dig. § 16.*]

3. MINES AND MINERALS (§ 74*)—OIL LEASE—VOID ASSIGNMENT—RIGHTS OF LESSOR—DAMAGES.

In a suit in equity to recover land from trespassers who had drilled oil wells thereon and for an accounting for the oil taken, where it appeared that defendants had gone into possession under a void assignment of a lease executed by complainant and had expended large sums in good faith in the mistaken belief that they had a lawful right to enter, they will not be required to account for the full value of the oil taken after it was produced, but only for its value in the ground as measured by the royalty complainant was to receive under the lease.

Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 202; Dec. Dig. § 74.*]

M. C. Reville, K. S. Murchison, and A. A. Davidson, for complainant.

Zevely, Givens & Smith and Eugene M. Mackey, for respondents.

CAMPBELL, District Judge. Susan Turner, the plaintiff herein, is a full blooded Cherokee Indian, and at the time of the executing of the lease hereinafter mentioned was a minor. On November 16, 1905, J. T. Parks, who, prior to that date, had been regularly appointed the plaintiff's legal guardian, executed to the Midland Oil Company, one of the defendants, an oil and gas mining lease covering the S. E. 1/4 of the S. W. 1/4, and the S. E. 1/4 of the S. W. 1/4 of the S. W. 1/4, of section 25, Tp. 25 north, range 16 east, in the Cherokee Nation, in the Indian Territory, which land was a portion of the allotment of the plaintiff. The lease was executed upon the form prescribed at the time by the Secretary of the Interior, and was made for a term extending to December 4, 1908. In the execution of this lease the guardian acted under an order of the United States Court for the Northern District of the Indian Territory, sitting at Tahlequah, which court had at that time jurisdiction of such guardianship matters under the laws then in force. Thereafter, on December 9, 1905, the lease was filed with the United States Indian agent at Muskogee, to be forwarded to the Secretary of the Interior for his approval. In addition to filing the lease with the United States Indian agent, it was necessary, under the rules and regulations of the Secretary of the Interior then in force, that the lessee in such cases also file an application to accompany the lease, upon a form prepared and pre-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

scribed by the Secretary of the Interior, setting forth certain information required by the department. The application to accompany this lease was not filed by the lessee, the Midland Oil Company, until September 5, 1906. One of the provisions of the lease was as follows:

"And it is mutually understood and agreed that no sub-lease assignment, or transfer of this lease or of any interest therein or thereunder can be directly or indirectly made without the written consent thereto of the lessor and the Secretary of the Interior first obtained, and that any such assignment or transfer made or attempted without such consent shall be void." ·

On the 29th day of April, 1907, the Midland Oil Company executed to William J. Seep, of Coffeyville, Kan., and Theodore N. Barnsdall, of Pittsburg, Pa., a written instrument purporting to be an assignment of this lease to Barnsdall and Seep. And on the same date, the said Barnsdall and Seep executed a written instrument styled an "acceptance" of such assignment. At the time of the execution of these instruments, the lease had not been approved by the Secretary of the Interior, nor had the plaintiff or her guardian consented either verbally or in writing to the assignment; but on June 18th, following, both the lease and assignment were approved by the Assistant Secretary of the Interior, as appears from an indorsement thereon reading as follows:

"Department of the Interior, Washington, D. C., June 18th, 1907. Lease and assignment approved as recommended. Jesse E. Wilson, Asst. Secretary of the Interior."

· The Midland Oil Company never took possession of this property under its lease. The evidence shows, however, that early in the year 1906, within a few months after the date of the execution of the lease, W. J. Seep, appearing to act for Barnsdall and himself, went upon this property, which consisted of about 50 acres of land, and proceeded to sink oil wells thereon until it had developed 12 producing wells. Pumps were put in, and the oil was drawn and delivered to the Prairie Oil & Gas Company, a corporation engaged in the business of buying and piping oil from that field. Early in January, 1907, the guardian having been advised that developments were being made upon the land, visited the property and found Seep in possession, and oil wells sunk on the land and all equipment set for drawing oil from the land—tanks erected, pipes laid, and engine and engine house, and a man in charge of the land. Upon inquiry at the office of the Prairie Oil & Gas Company, he learned that they were taking the oil from the land, and that it was being credited to Barnsdall and Seep.

On March 7th, following, he filed this action, styled a "complaint in equity," in the United States Court for the Northern District of the Indian Territory, sitting at Tahlequah, setting up the minority of the plaintiff, his guardianship, the execution of the lease, and the fact that it had never been approved by the Secretary of the Interior; that Barnsdall and Seep were unlawfully in possession of the land, and withholding the same from the plaintiff, destroying the timber thereon, and withdrawing the oil therefrom, to the irreparable injury of the plaintiff; and praying that a receiver be appointed pending the action, that the defendants be restrained from interfering with the

plaintiff's possession and peaceful enjoyment of the premises and from removing the oil therefrom, and that the defendants be required to account to the plaintiff for the timber cut from the land and the oil and gas or other mineral taken and extracted therefrom, and that plaintiff have judgment therefor, and that she be adjudged and decreed the exclusive possession of her said allotment. A receiver was appointed by the court, pending the litigation, and the receivership still continues. To this complaint the Prairie Oil & Gas Company filed its separate answer, disclaiming any interest in the property, and denying that it was in any way in collusion with the other defendants in the premises, and praying that the complaint be dismissed in so far as it was concerned. Subsequently, this action was dismissed as to that company.

On November 5, 1907, the defendants, Seep and Barnsdall and the Midland Oil Company, also filed their separate answers, admitting the execution of the lease to the Midland Oil Company, and alleging its approval by the Secretary of the Interior on the 18th day of June, 1907, setting up also the execution and approval of the assignment from the Midland Oil Company to Barnsdall and Seep, and denying the allegations of the complaint with reference to the conversion of oil and timber by them from the land, and praying that the receiver be discharged and that the complaint be dismissed as against them. By replication thereafter filed, the plaintiff denied the approval of the lease by the Secretary of the Interior, and also denied the assignment of the same. It is contended by the plaintiff that the Assistant Secretary of the Interior had no authority to approve the lease, and that the sole authority to do so is vested personally in the Secretary of the Interior himself. By the Revised Statutes of the United States, it is provided:

"Sec. 438. There shall be in the Department of the Interior an Assistant Secretary of the Interior, who shall be appointed by the President by and with the advise and consent of the Senate, and shall be entitled to a salary of six thousand dollars a year, to be paid monthly." U. S. Comp. St. 1901, p. 248.

"Sec. 439. The Assistant Secretary of the Interior shall perform such duties in the Department of the Interior as shall be prescribed by the Secretary or may be required by law." U. S. Comp. St. 1901, p. 249.

Section 439, above quoted, was construed by Attorney General A. H. Garland, in an opinion rendered by him on July 30, 1886, 18 Op. Atty. Gen. 432, in connection with section 3683 (U. S. Comp. St. 1901, p. 2456), which reads as follows:

"No part of the contingent funds appropriated by any department, bureau, or office shall be applied to the purchase of any articles, except such as the head of the department shall deem necessary and proper to carry on the business of the department, bureau, or office, and shall by written order direct to be procured."

The question arose as to whether or not the Assistant Secretary of the Interior, acting under direction of the Secretary of the Interior, might be considered "the head of the department," as the term is used in section 3683. In the course of the opinion, Mr. Garland says:

"This section 439, in other words, empowers the Secretary to make the assistant, as it were, his deputy in all things. It follows, then, that the Secretary of the Interior can lawfully devolve the authority vested in him by section 3683, Rev. St., upon Asst. Secretary of the Interior. This is entirely consistent with my opinion of the 16th inst., to which you refer, which is in effect that the duty mentioned in section 3683 can only be exercised by the head of the department, and cannot be transferred to an inferior office. So long as the powers delegated to an Assistant Secretary of the Interior by his superior remain unrevoked, the authority of the former is co-ordinate and concurrent with that of the latter."

In a later opinion, dated March 31, 1888, found in 19 Op. Atty. Gen. 133, Mr. Garland holds that under section 439 the consideration and determination of appeals to the Secretary of the Interior from the action of the Commissioner of the General Land Office may be made by the Assistant Secretary of the Interior, if the Secretary shall by regulation devolve the performance of such duty upon him.

The written statement of Jesse E. Wilson, Assistant Secretary of the Interior, was admitted in evidence by stipulation of the parties, to be given the same effect as a deposition, in which he states that on June 18, 1907, he approved the lease and assignment thereof, herein referred to, as Assistant Secretary of the Interior, and in which statement he also says:

"I further state that I was on said 18th day of June, 1907, and am now, Asst. Secretary of the Interior, and that on the said date last mentioned the approving of said lease and said transfer were duties devolving upon me as Asst. Secretary of the Interior by reason of the fact that said duties were duly prescribed by the Secretary of the Interior and devolved upon me as Asst. Secretary of the Interior by reason of the fact that said acts had been by the Secretary of the Interior duly prescribed, and I was directed and required by him to act in the premises. [Signed] Jesse E. Wilson, Asst. Secretary of the Interior."

It is my opinion that section 439 empowers the Secretary to delegate to the Assistant Secretary the authority to approve leases and assignments of leases, and that, so long as the powers so delegated to the Assistant Secretary of the Interior by his superior remain unrevoked, the authority of the Assistant Secretary is co-ordinate and concurrent with that of the Secretary. I am therefore of the opinion that the approval of the lease and assignment in controversy by the Assistant Secretary of the Interior, under the circumstances of this case, was equivalent to approval by the Secretary himself.

The approval of the lease and the assignment would relate back to the date of execution of the respective instruments, and would make them valid instruments from the dates of their execution, if all the other requirements necessary to their validity have been observed (Pickering v. Lomax, 145 U. S: 310, 12 Sup. Ct. 860, 36 L. Ed. 716), unless it appears that the parties, by their own acts in the meantime, have abandoned or invalidated them.

As stated before, the Midland Oil Company never had possession of the property under the lease, and are not now claiming possession. Seep and Barnsdall are, however, in possession of the property and claim, under the alleged assignment from the Midland

Oil Company. We have seen that the lease provided that it should not be assigned without the written consent of the lessor, and that any attempt to assign without his consent should be void. We have further seen that the assignment relied upon was made without the consent, either verbal or written, of the lessor, and, so far as the record shows, without his knowledge or any attempt to secure his consent. In fact, it was not made until some time after this action was commenced. On January 11, 1907, just seven days prior to the date of the approval of the alleged assignment by the Assistant Secretary, the following regulation relative to assignments was promulgated.

#### "Assignments.

"40. No lease or any interest therein, by working or drilling contract or otherwise, or the use thereof, directly or indirectly, shall be sublet, assigned, or transferred without the consent of the Secretary of the Interior; and if at any time the Secretary of the Interior is satisfied that the provisions of any lease, or that any of the regulations heretofore or that may be hereafter prescribed have been violated, he reserves authority, after ten days' notice to the parties, to cancel and annul such lease without resorting to the courts and without further proceedings, and the lessor shall be entitled to immediate possession of the land."

It will be noted that the regulation is silent as to any requirement that the lessor shall also consent to the assignment, and it is pointed out that in subsequent forms of leases, prepared in the Interior Department, the requirement that the consent of the lessor to an assignment shall also be procured is left out. It is therefore argued that notwithstanding the provision in the lease in controversy that no assignment should be made without the lessor's consent, still it was a matter which the Secretary could control, and that, subsequent to the promulgation of the regulation quoted, the consent or approval of the Secretary validated the assignment made without the lessor's consent, even in cases where such consent was provided for in the lease. To this I cannot agree. The Secretary could only approve or disapprove. When the lease was approved by him, it then became a valid and binding contract between the parties, and in my opinion it was not within the province of the Secretary to waive the consent of the lessor by subsequent regulation.

The requirement that the assignment be with the consent of the lessor is clear and unequivocal. The lessor did not consent to the attempted assignment under which Seep and Barnsdall claim, and therefore, by the plain terms of the lease, the assignment is void, and gives Seep and Barnsdall no legal right to operate upon the land.

Counsel for defendants devote a large portion of their brief to the discussion of the question of forfeiture, as applied to the lease to the Midland Oil Company. They contend that, even if the assignment is void, the attempt to assign without the lessor's consent does not amount to a violation of any of the covenants, stipulations, or provisions referred to in that paragraph of the lease which provides that such violation shall work a forfeiture. It is true that a court of equity, while ever ready to relieve against, is very loath

to enforce, a forfeiture. But I cannot see how the question of the forfeiture of the original lease is really in this case. The Midland Oil Company are making no claim to the property, having turned it over to Seep and Barnsdall, and have virtually abandoned it. It is therefore unnecessary to determine· what effect, if any, the attempted assignment had by way of forfeiting the original lease. The case is narrowed down to a controversy between the plaintiff and Seep and Barnsdall, and it is the respective rights of these parties alone that the court must now determine.

Under the facts in this case, some of the contentions of the plaintiff herein are not such as favorably address themselves to a court of equity. A court of equity seeks to compensate the plaintiff, but it must be a very strong case, if any, in which it will go further and punish the defendant. As· said in Winchester v. Craig, 33 Mich. 205:

"The law rather aims so far as possible, to protect the plaintiff; but at the same time it has a due regard to the rights of the defendants, and it will not inflict an undue or unjust punishment upon them, in cases where they are not deserving it, as a means of righting an injury, especially where it would much more than compensate the owner for the injury which he sustained."

It appears from the affidavit of Barnsdall, which by consent of parties·is taken as a deposition in the case, that the lease to the Midland Oil Company was taken by his agent, Mitchell; that he intended that it should be taken in the name of Seep, and believed it had been so taken; that he advised Seep by wire that the lease had been taken for him, and to go ahead, meaning to go ahead and have the lease approved. Barnsdall was then in the East, and Seep was here in the West. It appears that Seep understood that he was then at liberty to go ahead and develop the property. He did so, and it appears that, upon the mistake being called to the attention of the Midland Oil Company, it executed an assignment of the lease, but not until after the commencement of this suit. This assignment, as we have seen, was not consented to by the lessor, and was therefore void. In the meantime, Seep had spent several thousand dollars on the property in developing it. By some arrangement between themselves, Barnsdall was to share in the profits of the production from the lease after expenses of development were paid, but up to the commencement of·this suit it appears that Seep was operating the property. Under these facts, while I find that Seep was technically a trespasser upon the land, he was what the law terms an innocent trespasser. It appears that he believed that he had a lawful right to enter upon the property. In this he was mistaken. While the operations were in the name of Seep and Barnsdall, it appears that the actual development work was done by Seep, and it does not appear that, prior to the commencement of this suit, Barnsdall knew that Seep had not secured and perfected a lease.

If this were the case of a mine producing gold or silver or coal, the recovery of the plaintiff would be the value of the ore in the mine, not its value after raised to the surface and treated and ready for market. As said by Judge Sanborn in Resurrection Gold Min-

ing Company v. Fortune Gold Mining Company, 129 Fed. 668, 64 C. C. A. 180:

"The measure of damages for wrongfully taking ore from the land of another through inadvertence or mistake, or in the honest belief that one is acting under his legal rights, is the value of the ore in the mine."

### In 27 Cyc. p. 639, it is said:

"An innocent trespasser, one who, by mistake or unintentionally, or in the honest belief that he is lawfully exercising a right which he has, enters upon the property or upon the vein of another, and takes ore, coal, oil, or other substances therefrom, may limit the owner's recovery to the value of the substance so taken, less the actual cost of production, including digging, tramming, hoisting, transportation, and treatment."

Under the circumstances of this case, in my judgment the most practicable means of determining the value of this oil to the plaintiff, as it lay in the ground, is to determine the royalty its production would have afforded her. Under the lease to the Midland Oil Company this would have been 10 per cent. of the value of the oil when produced and ready for the market, and it is a matter of general knowledge that this was the prevailing royalty at the time

I therefore find that the plaintiff should recover from the defendants, Seep and Barnsdall, an amount equal to 10 per cent. of the value of all oil produced from the premises prior to the commencement of this action, with interest thereon at the legal rate from the time this suit was begun, the amount of oil so produced and its value to be determined upon proof taken herein before the master in chancery of this court, unless the parties hereto shall agree upon such amount without such reference. In this, the plaintiff secures the same royalty she would have realized under a valid lease. The remainder of the oil produced before the commencement of this action or its proceeds, after the payment of the said 10 per cent. to the plaintiff, shall be and remain the property of the defendants Seep and Barnsdall.

The defendants Seep and Barnsdall may within 60 days from the date of decree herein remove from said premises all tools, boilers, boiler houses, pumping and drilling outfits, tanks, engines, and machinery which they may have erected or placed upon said property during their occupancy of the same.

The plaintiff is adjudged and decreed to be the owner of all oil produced from said premises under the receivership since the commencement of this action, and the receiver will account to her therefor. The defendants will be enjoined and restrained from interfering with the plaintiff in the possession and peaceful enjoyment of the premises, and from exercising or attempting to exercise any further rights of possession or ownership therein, excepting so far as shall be necessary to remove the articles above referred to.

The costs of this action, including one-half the salary of the receiver, shall be paid by defendants Seep and Barnsdall. The remainder of the receiver's salary shall be paid by the plaintiff.

The receiver will deliver the possession of said premises to the

plaintiff, and will at an early date file his final report as such receiver, upon the approval and confirmation of which he shall be finally discharged.

Let decree be entered accordingly.