JOHNSON v. KENNECOTT COPPER CORP.

(Third Division.   Valdez.   October 17, 1916.)

No. 787

1. MASTER AND SERVANT ⊜⇒351—WORKMEN'S COMPENSATION ACT—
ELECTION.

The plaintiff was injured in defendant's reduction plant at
Kennecott, Alaska, December 14, 1915, and brought this action
for damages without having served notice on the defendant that
he elected to waive his rights under the Workmen's Compensa-
tion Act, passed by the Legislature of Alaska.   Sess. Laws 1915,
p. 146.   Demurrer sustained.

2. CONSTITUTIONAL LAW ⊜⇒206(1), 245—STATUTES ⊜⇒81—EQUAL
PROTECTION OF LAWS—PRIVILEGES AND IMMUNITIES—LOCAL LAWS
—WORKMEN'S COMPENSATION ACT.

The validity of the Workmen's Compensation Act passed by
the Legislature of Alaska (Sess. Laws 1915, p. 146) is attacked
as unconstitutional because, first, it denies the plaintiff equal
rights under the Fourteenth Amendment to the Constitution;
and, second, because the Legislature is forbidden to grant any
corporation, association, or individual any special or exclusive
privilege or immunity, or from passing local or special laws in
any of the cases mentioned in Act Cong. July 30, 1886, c. 818, 24
Stat. 170.   *Held*, the act is constitutional.

3. CONSTITUTIONAL LAW ⊜⇒208(7)—CLASS LEGISLATION—WORK-
MEN'S COMPENSATION ACT.

The Workmen's Compensation Act passed by the Legislature
of Alaska (Sess. Laws 1915, p. 146) is not unconstitutional be-
cause its provisions are limited to the mining industry.

4. INFANTS ⊜⇒2—STATUS.

A legislative enactment ought not to be held unconstitutional
as to one person and not as to all.   The plaintiff was a minor,
but was of the age of discretion when he voluntarily engaged in
the hazardous employment in which he was injured.   He is
bound by all constitutional and valid laws, the same as all other
persons are.

The act of the territorial Legislature of Alaska approved
April 29, 1915, commonly called the Workmen's Compensation
Act (chapter 71, Session Laws of Alaska 1915), provides
for the measure and recovery of compensation for injured
employés in the mining industry of Alaska.

The plaintiff was injured by the machinery in defendant's

---

⊜⇒See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

mill at Kennecott, Alaska, December 14, 1915, said injury
resulting in the loss of his right foot, and plaintiff brings this
action against defendant to recover the sum of $25,000 dam-
ages under the common law, entirely disregarding the provi-
sions of said act of the territorial Legislature. It is not al·
leged that plaintiff, as an employé of defendant, elected to re-
ject the terms, conditions, and provisions of said act, as in
said act provided. Defendant moved to strike out the ma-
terial portions of plaintiff's complaint, and before said mo-
tion was heard plaintiff and defendant stipulated to submit
the question, upon written briefs, of the constitutionality of
said act.

J. H. Cobb, of Juneau, for plaintiff.
R. E. Capers, of Cordova, for defendant.
E. E. Ritchie, of Valdez, amicus curiæ.

BROWN, District Judge. The plaintiff attacks the validity
of said act on the ground that it is unconstitutional, in that
it denies to plaintiff that equal protection of the law guaran-
teed by the Fourteenth Amendment to the Constitution of the
United States; second, that such legislation is forbidden by
that clause of section 9 of the Organic Act of the territory
of Alaska (37 Stat. L. 514 [U. S. Comp. St. 1916, § 3536]) ·
prohibiting the Legislature from granting to any corporation,
association, or individual any special or exclusive privilege
or immunity, or from passing local or special laws in any of
the cases mentioned in the act of Congress of July 30, 1886.
Laws similar to this have been enacted in more than twenty
states as the result of years of discussion and agitation, and
seem to be the natural result of changed and changing indus-
trial conditions. They have been held in nearly all cases to
be constitutional by the highest courts of these states, and by
the Supreme Court of the United States.

The chief point relied upon by plaintiff is that the selection
of the mining industry is an arbitrary selection, and consti-
tutes class legislation, in violation of the Fourteenth Amend-
ment to the Constitution.

In the case of Lindsley v. Natural Carbonic Gas Co., 220 U.
S. 78, 31 Sup. Ct. 340, 55 L. Ed. 369, Ann. Cas. 1912C, 160,
the court says:

"The equal protection clause of the Fourteenth Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. (2) A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. (3) When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. (4) One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary. Bachtel v. Wilson, 204 U. S. 36, 41 [27 Sup. Ct. 243, 51 L. Ed. 357]; Louisville & Nashville R. R. Co. v. Melton, 218 U. S. 36 [30 Sup. Ct. 676, 54 L. Ed. 921, 47 L. R. A. (N. S.) 84]; Ozan Lumber Co. v. Union County Bank, 207 U. S. 251, 256 [28 Sup. Ct. 89, 52 L. Ed. 195]; Munn v. Illinois, 94 U. S. 113, 132 [24 L. Ed. 77]; Henderson Bridge Co. v. Henderson City, 173 U. S. 592, 615 [19 Sup. Ct. 553, 43 L. Ed. 823]."

In a case designated as the "Second Employers' Liability Case," 223 U. S. at pages 52, 53, 32 Sup. Ct. at page 176 (56 L. Ed. 327, 38 L. R. A. [N. S.] 44), the court says:

"Coming to the question of classification, it is true that the liability which the act creates is imposed only on interstate carriers by railroad, although there are other interstate carriers, and is imposed for the benefit of all employés of such carriers by railroad who are employed in interstate commerce, although some are not subjected to the peculiar hazards incident to the operation of trains or to hazards that differ from those to which other employés in such commerce, not within the act, are exposed. But it does not follow that this classification is violative of the 'due process of law' clause of the Fifth Amendment. Even if it be assumed that that clause is equivalent to the 'equal protection of the laws' clause of the Fourteenth Amendment, which is the most that can be claimed for it here, it does not take from Congress the power to classify, nor does it condemn exertions of that power merely because they occasion some inequalities. On the contrary, it admits of the exercise of a wide discretion in classifying according to general, rather than minute, distinctions, and condemns what is done only when it is without any reasonable basis, and therefore is purely arbitrary."

Nothing is better known concerning Alaska than that it is essentially a mining country, and the Legislature in selecting the mining industry toward which to apply the liberal and enlightened policy embodied in this law, both toward employer and employé, must be deemed to have acted from the

highest considerations of public policy and the fullest knowledge of the existing conditions. The act leaves it within the power of both employer and employé to reject the provisions of this act. Were its terms unjust, oppressive, or harsh, it is to be presumed that the plaintiff, as well as other employés, would have elected to reject its terms.

Instead of the old system of uncertainty, confusion, and speculation, involving much cost and vexatious and oftentimes intolerable delay, it provides a reasonable compensation to be paid by the employer and a sure and certain indemnity to the employé, within a reasonable time and with little cost or expense.

The general subject is summed up in the very recent case of Miller v. Wilson, 236 U. S. at pages 382, 383, 384, 35 Sup. Ct. 344, 59 L. Ed. 628, L. R. A. 1915E, 829, in an opinion by Mr. Justice Hughes as follows:

"The Legislature is not debarred from classifying according to general considerations and with regard to prevailing conditions; otherwise, there could be no legislative power to classify. For it is always possible by analysis to discover inequalities as to some persons or things embraced within any specified class. A classification based simply on a general description of work would almost certainly bring within the class a host of individual instances exhibiting very wide differences; it is impossible to deny to the Legislature the authority to take account of these differences and to do this according to practical groupings in which, while certain individual distinctions may still exist, the group selected will as a whole fairly present a class in itself. Frequently such groupings may be made with respect to the general nature of the business in which the work is performed; and, where a distinction based on the nature of the business is not an unreasonable one, considered in its general application, the classification is not to be condemned.  *  *  *  The contention as to the various omissions which are noted in the objections here urged ignores the well-established principle that the Legislature is not bound, in order to support the constitutional validity of its regulation, to extend it to all cases which it might possibly reach. Dealing with practical exigencies, the Legislature may be guided by experience. Patsone v. Pennsylvania, 232 U. S. 138, 144 [34 Sup. Ct. 281, 58 L. Ed. 539]. It is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest. As has been said, it may 'proceed cautiously, step by step,' and 'if an evil is specially experienced in a particular branch of business' it is not necessary that the prohibition 'should be couched in all-embracing terms.' Carroll v. Greenwich Insurance Co., 199 U. S. 401, 411 [26 Sup. Ct. 66, 50 L. Ed. 246]. If the law presumably hits the evil where it is most felt, it is not to be overthrown because

there are other instances to which it might have been applied.  Keo-
kee Coke Co. v. Taylor, 234 U. S. 224, 227 [34 Sup. Ct. 856, 58 L. Ed.
1288]."

In the case of Cunningham v. Northwestern Improvement
Co., reported in 44 Mont. 210, 119 Pac. 561, a case very sim-
ilar to the one at bar, inasmuch as the coal mining industry
was selected by the Legislature as the only subject of legisla-
tion, the court says:

"But it is contended that the act is an example of class legisla-
tion, and several reasons are urged in support of this contention.  The
first is that it singles out one particularly hazardous employment,
and subjects it to burdens not placed upon other extrahazardous em-
ployments within the state.  The Legislature has declared, in effect,
that coal mining is a dangerous and extrahazardous business, and
we think it is generally known to be so.  The Court of Appeals of
New York, in Ives v. South Buffalo Ry. Co., 201 N. Y. 271, 94 N. E.
431 [34 L. R. A. (N. S.) 162, Ann. Cas. 1912B, 156], disposed of this
question, correctly we think, as follows: 'The appellant contends that
the classification in this statute of a limited number of employments
as dangerous is fanciful or arbitrary, and is therefore repugnant to
that part of the Fourteenth Amendment to the federal Constitution
which guarantees to all our citizens the equal protection of the laws.
Classification, for purposes of taxation, or of regulation under the
police power, is a legislative function, with which the courts have
no right to interfere, unless it is so clearly arbitrary or unreason-
able as to invade some constitutional right.  A state may classify
persons and objects for the purpose of legislation, provided the classi-
fication is based on proper and justifiable distinctions, and for a pur-
pose within the legislative power.  There can be no doubt, we think,
that all of the occupations enumerated in the statute are more or less
inherently dangerous to a degree which justifies such legislative reg-
ulation as is properly within the scope of the police power.  *  *  *
The mandate of the federal Constitution is complied with if all who
are in a particular class are treated alike; and that, we think, is the
effect of this classification.'  See, also, Orient Ins. Co. v. Daggs, 172
U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552; Magoun v. Illinois T. & S.
Bank, 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037.  In the case of
Quong Wing v. Kirkendall, 39 Mont. 64, 101 Pac. 250, this court said:
'The Legislature is presumed to have exercised a reasonable discre-
tion in making the classification, and the court sought not to inter-
fere with the action of this co-ordinate branch of the government,
until the party upon whom rests the burden of proof clearly shows
that he is denied the equal protection of the laws.  Every intend-
ment is in favor of the validity of the legislative action.  In other
words, the classification is presumed to be reasonable.'  The fact
that coal mining is alone selected from numerous other dangerous
employments is not at all significant.  Legislation of this nature is in
its infancy, and if it be found adequate to correct the evils growing

out of the present system it may gradually be extended to apply to all extrahazardous employments. So long as all persons operating coal mines are treated alike, no one of them has cause of complaint. The same may be said of coal miners. See Soon Hing v. Crowley, 113 U. S. 703, 5 Sup. Ct. 730, 28 L. Ed. 1145, and Missouri Pac. Ry. Co. v. Mackey, 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107."

Decisions from the courts of many of the states can be cited, wherein is expressed, in language the clearest and most convincing, the validity of similar laws, and it would therefore be useless to attempt to add anything to the able and exhaustive arguments and reasonings of these high tribunals and the decisions of the Supreme Court of the United States.

Counsel for the plaintiff, as well as the amicus curiæ, who has filed a brief and argument, contends that the act ought not to be sustained for several reasons, among which is that the injured employé must bring a suit to recover the compensation.

It is difficult to conceive how a law could be framed that would not provide in some manner for a judicial determination of the facts alleged in a claim for personal injury. How else could it be ascertained whether or not the claim was bona fide, what was the extent of the injury, etc.? It may be true, also, that the injured employé may find it necessary to engage an attorney to prosecute his claim, and that an appeal may be taken. But under our present judicial system such expenses or delays are unavoidable. The entire matter of the procedure, like the amount of compensation fixed for certain injuries, is for the determination of the Legislature, and the more simple, speedy, and effective the procedure, the better it will be.

It is also argued that the compensation provided is not to be paid by or from an insurance fund, as is the case in many of the states, but that the provision that the payment is to be made direct by the employer takes it out of the general class of adjudicated cases.

In Western Indemnity Co. v. Pillsbury, a California case, reported in 170 Cal. 700, 151 Pac. 404, the court says:

"Nor do we think that any distinction, so far as constitutional objections are concerned, can be based upon the fact that this act imposes upon the employer a liability to compensate his employés for injuries actually received in the particular employment, while under other statutes—for example, that of Washington—all employers are

required to contribute sums, proportioned to their pay roll and graduated according to the nature of the industry, into a fund out of which all claims for compensation are to be paid. The essential question is whether liability for injury suffered by employés through accident may be imposed upon employers who have been guilty of no breach of duty. Once this question is answered in the affirmative, the mode of imposing the liability, whether it be by way of a proportionate contribution having some of the characteristics of a tax, or by fixing a direct liability upon each employer for each accident as it occurs, is a matter for legislative determination."

Counsel also insists that the plaintiff, being a minor, cannot be bound by the act of the Legislature in question, as he cannot be held to have contracted in relation thereto. A legislative enactment ought not to be held unconstitutional as to one person and not as to all. The plaintiff is bound by all constitutional and valid laws, the same as all other persons are. He was of the age of discretion, he voluntarily engaged in this employment, and he could, by himself or a guardian, have given the necessary notice provided in said act, so that he would not have been bound thereby. The Legislature would have power to reduce the age of majority, so that the act would apply to one under 21 years of age, and it seems reasonable to hold that that is in effect what they have done in this case.

If this act in question is not as complete or as satisfactory as it might be, it is a matter for the Legislature to remedy and not the courts. It is the settled rule that a statute will not be held unconstitutional where a reasonable doubt exists as to its invalidity. Evanhoff v. State Industrial Acc. Commission, 78 Or. 503, 154 Pac. 112, and the cases there cited.

The demurrer to the plaintiff's complaint will therefore be sustained.