## MARCH OIL CO. v. LEE.
## SAME v. LAND.

Nos. 15264, 15265—Opinion Filed Dec. 23, 1924.

Rehearing Denied Nov. 17, 1925.

(Syllabus.)

1. **Indians—Oil Leases on Restricted Lands —Approval by Secretary of the Interior —Necessity.**

Leases for oil and gas purposes on restricted lands may be made with the approval of the Secretary of the Interior, under regulations prescribed by him, and not otherwise.

2. **Same—Rules of Interior Department— Reasonable Construction.**

In construing the rules and regulations of the Department of the Interior relating to oil and gas leases on restricted lands, the rules should receive a reasonable, sensible construction in preference to one which would render a portion of the rules useless or deleterious.

3. **Same—Department's Construction Followed.**

The general rule of law is, where a Department is authorized to adopt rules and regulations, and said Department has placed a construction upon its rules and regulations, the courts will follow the Department's construction unless the construction placed thereon is clearly erroneous.

4. **Same—Rule Relating to Change in Form of Lease.**

The construction placed by the Department of the Interior on section B 15 A of its rules and regulations of April 20, 1908, wherein it held that the rules made no provision for the lessee to sign the stipulation referred to therein regarding the changing of the form of the lease to comply with the form promulgated April 20, 1908, held, the rules are subject to said construction and the same is not clearly erroneous.

5. **Same—Validity of Extension of Lease— Increased Royalty as Consideration.**

Record examined, and held, that the lease contract executed by the Indian authorized the Secretary of the Interior to make amendments to its rules and regulations, and the lease should be subject to said rules, and the amended rules and regulations provided for an increased royalty to be paid the Indian, and a provision extending the lease to as much longer as oil or gas should be produced from the premises, and the real consideration for the extension of the lease was the increased royalty; held, when the

Department of the Interior held the lessee had complied with the rules and regulations, and was entitled to the extension, and having extended the same, and for more than ten years the lessor received the increased royalty by virtue of the lessee complying with the amended rules and regulations, a judgment based upon said facts ejecting the lessee will be vacated and set aside upon appeal.

Error from District Court, Creek County; Thos. A. Edwards, Assigned Judge.

Actions by Gano Lee, an incompetent, by guardian, and Salina Land against the March Oil Company. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

Con Linn, Edwin S. Booth, and Linn & Spradling, for plaintiff in error.

V. H. Albertson, T. L. Blakemore, and Paul Land, for defendants in error.

McNEILL, C. J. The above cases were commenced in the district court of Creek county in December, 1922, by plaintiffs to recover possession of their restricted lands, and for an accounting for oil and gas taken from said lands since January 7, 1922.

The material facts may be stated as follows: Plaintiffs are full-blood Creek Indians, and on January 7, 1907, executed oil and gas leases to one Snyder, on the lands in controversy. Said leases were executed on the form prescribed by the rules and regulations of the Secretary of the Interior and in accordance with the rules and regulations in force and effect at that time, and as provided by the rules and regulations, were for a term of 15 years with a ten per cent. royalty, and were approved by the Secretary of the Interior. Shortly after the execution and approval of the leases, the Department of the Interior prescribed amended rules and regulations known as the rules and regulations of April 20, 1908. The amended rules and regulations prescribed a new form of oil and gas leases on restricted land, the term being changed from 15 years to ten years with the provision as much longer thereafter as oil or gas was produced from said premises, and increased the royalty from ten to twelve and one-half per cent. The 15 year lease contained no provision for extending the lease beyond the 15 year term. The original lease form, as well as the new form, contained the following provision:

"And it is mutually understood and agreed that this indenture of lease shall in all respects be subject to the rules and regulation heretofore or that may hereafter be lawfully prescribed by the Secretary of. the Interior relative to oil and gas leases in the Creek Nation."

The leases contained a further provision that they are not to be transferred or assigned unless the assignment is approved by the Secretary of the Interior.

In May, 1908, Snyder transferred and assigned said lease to the March Oil Company. These assignments were approved by the Secretary of the Interior July 25, 1908, with the following indorsement upon the lease:

"Washington, D. C. May 25, 1908.

"The assignment of this lease to the Omega Oil Company is approved, subject to the regulations of April 20, 1908, the rate of royalty on oil to be 12½ per cent.

"Jesse E. Wilson, Assistant Secretary."

The Commissioner of the Five Civilized Tribes kept a lease docket, and the following entry appears on said docket:

"Assignment and bond approved subject to regulations of April 20, 1908 royalty oil rate 12½%."

The lease docket contained an entry of August 8, 1908, as follows:

"Received consent of lessee to regulations of April 20, 1908, and increase royalty rate to 12½%."

The Omega Oil Company developed said premises and in May, 1911, transferred said leases to the March Oil Company. The lease docket discloses that the bond of the March Oil Company was filed June 8, 1911, and the following entry appears on the docket June 14, 1911:

"Received lessor's consent to proposed assignment."

The assignment was approved by the Secretary on June 19, 1911. The lease docket disclosed that in June, 1922, the Commissioner of the Five Civilized Tribes notified the March Oil Company that its lease had expired on January 7, 1922. The March Oil Company filed an application or petition with the Secretary of the Interior, setting forth the fact that under subdivision B 15 A of the amended rules and regulations of 1908, in all leases executed or assigned after October 7, 1907, the lessee might obtain all the rights and privileges of the terms of the lease form approved April 20, 1908, providing the owner of the lease stipulated in writing to increase the royalty to 12½ per cent. The petition alleged that the company had complied with the terms of the lease form of April 20, 1908, by paying the 12½ per cent. royalty and was of the opinion that the stipulation had been filed consenting to the increase in royalty, but had been unable to find such a

stipulation, but if one had not been filed, it was through inadvertence and mistake; that the company had always acted upon the theory that such stipulation had been filed, and had developed the property relying upon that fact, and had paid the increased royalty believing it had been filed. There was considerable correspondence between the Commissioner of the Five Civilized Tribes and the Secretary of the Interior, and the Legal Department of the Secretary. The correspondence discloses the plaintiffs herein filed objections, protested against granting the relief. Neither the application nor the correspondence mentions the fact that the lease docket of the Commissioner of the Five Civilized Tribes contained the notation or entry that the lessee had filed its consent to the increase in royalty in 1908. The Department in its decision stated as follows:

"While the regulations provide that the lessee must give notice in writing to the lessor of intention to increase royalty, there is no provision therein requiring the written consent of lessors."

The Secretary further held, or stated, in substance:

"That the increased royalty constituted the real consideration for the benefits under the new lease form."

The Department then considered whether the Secretary of the Interior could waive the provision of the rules that required the lessee to file its consent in writing, and the Legal Department advised the Secretary that as he was given the power and authority to promulgate the rules and regulations, he would likewise have power and authority to waive a technical compliance with the same, if they had been substantially complied with. The Department held the lessee had substantially complied with the rules and regulations of April 20, 1908, and the Department would waive the fact that the lessee had not stipulated in writing to pay the increased royalty, in view of the fact that lessee had paid the increased royalty for a number of years, and the Secretary made an order extending the lease in compliance with the form of April 20, 1908, being as long as oil and gas was produced.

In December, 1922, the plaintiffs commenced these suits, and they were tried as one case, but separate judgments were rendered therein in favor of the plaintiffs and against the defendant. From said judgments the defendant has appealed. The case here involves more a question of law than of fact, or the construction of the oil and gas lease, and the rules and regulations of the Secretary of the Interior. The Department of the Interior has construed its

rules and regulations and held the lessee had substantially complied with the same, and the lease is in full force, and under the terms of the lease it is collecting the royalties. It has been held in Sutherland v. U. S., 266 U. S. 226, and Privett v. U. S., 256 U. S. 201, that any judgment this court can render will not be binding on the government, as it is not a party to this proceeding. The Department of the Interior takes the position the lease is valid, and requires the lessee to operate and pay royalty under the terms of the lease, and the company has a bond with the Secretary for the faithful performance of that duty. The Indian seeks relief in this court, where the government is not a party, and seeks to eject defendant from the land and seeks to require the company to account to him for all the oil and gas produced from the premises, and being the same oil and gas the lessee is paying royalty on to the government for the benefit of the Indian. It might be said this controversy is more between the Indian and the government than between the Indian and lessee. In view of these facts, we will first direct our attention to the contention of the plaintiff below, the defendant in error here. The plaintiff below contends, first:

"The power of the Secretary of the Interior with reference to oil and gas leases and restricted Creek Indian lands is merely that of approval or disapproval. He cannot make or initiate the contract for the Indian. That power lies only with the Indian."

We think the plaintiff below places too narrow a construction upon the power of the Secretary of the Interior. It is not contended the Secretary of the Interior can initiate a lease, nor is that question involved in this case. The Secretary, however, has more power than to simply approve or disapprove the lease made by the Indian. Under the Supplemental Creek Agreement and the Act of May 27, 1908, it is provided that the lease on restricted lands for oil or gas may be made with the approval of the Secretary of the Interior under rules and regulations provided by the Secretary of the Interior, and not otherwise.

The Supreme Court of the United States in the case of Parker v. Richards, 65 L. Ed. 954, stated as follows:

"Leases on restricted lands may be made with the approval of the Secretary of the Interior under regulations prescribed by him, and not otherwise."

It is well settled that the Secretary of the Interior not only has the right to approve or disapprove a lease, but he has the power and authority to prescribe rules and reg-

gulations, and in such rules and regulations, even before the execution of the lease involved in the present case, his rules and regulations prescribed the form of the lease, the terms of the lease, the royalty · to be paid. and that the royalty should · be paid to the Secretary of the Interior, together with other terms and conditions, and the form of lease provided it should be subject to the rules and regulations prescribed by the Secretary of the Interior in the future.

The question involved in this case is not whether the Secretary of the Interior may initiate a lease, but having prescribed rules and regulations, and the Indian having executed a lease in compliance with the rules and regulations. ·which lease contained the provision that the lease would be subject to the rules and regulations prescribed by the Secretary of the Interior heretofore or that may hereafter be prescribed, can the Indian eject the defendant when under the rules and regulations of the Department of the Interior the lease is in full force and effect?

The parties in their lease contract provided in plain and unambiguous language that the lease should be subject to the rules and regulations that might be promulgated by the Secretary of the Interior. These rules provided that the Secretary would approve a lease for a term of 15 years—no provision was made for extension thereafter if oil or gas was produced on the premises—and reserving a ten per cent. royalty. The form of lease contained a provision that both parties mutually agreed the lease would be subject to the rules and regulations then existing or that thereafter might be in force and effect. The Secretary of the Interior then promulgated his new rules, and, instead of a 15 year lease, provided for a lease for ten years, but with the provision for extension of the lease for as much longer as oil or gas should be produced from the premises. The amended rules provided the method by which the lessee of former leases might receive the benefits of the new form of lease by stipulating that he would pay an increased royalty, or 12½ per cent., and upon approval by the Secretary of the Interior and notice of that fact to the Indian, the terms of the lease would be changed to conform to the form and contain the provision as much longer thereafter as oil or gas is produced from the premises.

The plaintiff. however. contends that under the rules and regulations it is necessary for the Indian, or the lessor, to sign a stipulation regarding the increase in royalty. The Department. however. has taken a different view, and construes its rules and regulations to the contrary. Section B of the rules and regulations, which is controlling and applicable to the lease in this case, provided as follows:

"On and in consideration that the owner of said lease stipulate in writing to the increase of the royalty on oil therein to 12½% of the gross proceeds."

Of section C, the material parts are as follows:

"In all cases, notice in writing must be given by the owner of the lease to the owner of the leased land of intention to increase royalty on oil, and in consideration thereof obtain the benefits of the lease form, approved by the Secretary of the Interior, April 20, 1908."

It is further provided:

"The stipulation of the owner of the lease agreeing to increase the royalty must be filed by the Secretary of the Interior on or before eight years from date of execution of lease."

It will be noticed that in no place is there any provision requiring the lessor to sign any stipulation. Plaintiff, however, contends that the word "stipulate" means that it must be signed both by the lessor and the lessee. The general rules of construction of statutes and rules · and regulations which have force and effect of statutes is to give force and effect to each provision thereof and to construe the same so as to make valid every provision thereof.

In the case of Harris v. Bell. 250 Fed. 209, it is said:

"Every statute should have a reasonable, sensible construction in preference to one which renders it, or a substantial part of it, useless or deleterious."

If we construe the rules as contended for by the plaintiffs below, section C requires the doing. of a useless act. The construction they attempt to place upon the rules would require the lessor and the lessee to sign a stipulation in writing regarding the change in the form of the lease and the increased royalty. After they had signed a binding agreement, the lessee must notify the lessor in writing that he will consent to do the very thing which the contract or stipulation provided he should do. The only reasonable construction to be given the rules and regulations is that given by the Department. First, the lessee is to file a stipulation in writing that he will consent to pay the increased royalty, and as the Department in construing this provision said, that was the only real consideration for permitting the lease to be extended beyond the term. We think the rules and regulations are subject to the construction placed

upon it by the Department of the Interior, and not the construction placed upon it by the plaintiffs below.

The plaintiffs, to sustain their position that the Secretary has no authority except to approve or disapprove a lease, rely upon the cases of Midland Oil Company v. Turner, 179 Fed. 74, and Turner v. Seep, 167 Fed. 646. These cases are not in point, for in those cases the lease under consideration contains an express provision that the lease should not be assigned or transferred, nor any interest therein, without the written consent of the lessor and the Secretary of the Interior, and that such an assignment or transfer without such written consent would be void. In those cases the court was dealing with persons to whom the lease had been assigned, in direct violation of the terms of the lease, as no written consent had been obtained from the Indian or the Secretary of the Interior. Another federal case cited and relied upon is the case of Jennings v. Wood, 192 Fed. 507. The question involved in that case was the power and authority the Secretary of the Interior to approve a lease executed by a minor who was not competent to make it, and which was a nullity. The other case cited is the case of United States v. McMurray, 181 Fed. 723. That suit was instituted by the United States to enforce against the lessee a specific requirement or rule made by the Department, which the court held amounted to an amendment of the statute.

The above cases deal with an entirely different condition and situation from that arising in the case at bar. In the first two cases, the lease contract was different and contained the provision that the lease should not be assigned or transferred without the written consent of the lessor and the Secretary of the Interior. No such provision is contained in the lease under consideration. The only provision for assignment of the lease is that the assignment must be approved by the Secretary of the Interior. The lessor has nothing to do with the assignment. The general rule of law is, the court will follow the construction placed upon statutes by the Executive Department where the same has been followed and acted upon, unless the construction placed upon the same is clearly erroneous. This same rule of law is applicable to the rules and regulations promulgated by the Secretary of the Interior, and where he has placed a construction upon his rules and regulations, this court should follow the same unless the construction placed thereon is clearly erroneous. See Crosbie v. Partridge,

85 Okla. 186, 205 Pac. 758, and cases therein cited.

This court will be very reluctant to place a different construction from the Secretary of the Interior's construction of his own rules and regulations in this class and character of cases, and should for the following reasons:

1st. Leases are made and must be made in accordance with the rules and regulations of the Department of the Interior. The leases are made both for the mutual benefit of the lessor and the lessee. The lessee in making said lease stipulates and agrees that it is under the supervision and control of the Department of the Interior; the royalties are paid to the Department of the Interior, he must execute a bond to the Department and is subject to be sued by the government to enforce the conditions of the lease.

In the instant case the Indian, through the government, according to his contract with the lessee, has collected an increased royalty amounting in one case to over $5,000 and in the other case to over $7,000, being the difference between ten per cent. and 12½ per cent. royalty. The government, on the one hand, has held under its construction of the lease that the lessee and his bondsmen are required to comply with the terms of the lease, and the government is now collecting for the use and benefit of the Indian the royalty; on the other hand, the lessee is subjected to a suit by the Indian to eject the lessee from the premises. Can it be, the lessee may be ejected in a suit by the Indian and he and his bondsmen be subjected to a suit on behalf of the U. S. Government for the benefit of the Indian to carry out the terms of the lease? This should not be permitted, except in a case where the construction placed upon the lease by the Department of the Interior is clearly erroneous unless all the parties are in court where a final adjudication of the rights of all parties may be determined.

We therefore conclude that, the Department having construed that under the rules and regulations the lease was in full force and effect, and the lessee having for more than ten years paid the increased royalty and the Indian having received the increased royalty based upon the authority of the Department to promulgate such rules, and the construction placed upon the lease contract and the rules and regulations by the Department of the Interior is fair and reasonable, and not clearly erroneous, the same will be followed by this court. Having reached that conclusion, the trial court

should have rendered judgment in favor of the defendant and against the plaintiffs.

For the reasons stated, the judgment of the trial court is reversed and remanded, with the instructions to take such other proceedings not inconsistent with the views herein expressed.

JOHNSON, HARRISON, LYDICK, WARREN, and GORDON, JJ., concur.

Note.—See under (1) 31 C. J. § 49; (2, 3, 4, 5) 31 C. J. §' 48 (1926 Anno).