**GENTRY et al. v. McCURRY et al.**

No. 21370. Opinion Filed May 16, 1933.

H. W. Conyers and H. R. Duncan, for plaintiffs in error.

Hamilton, Gross & Howard, Rovert Stuart, and Humphrey & Spence, for defendants in error.

BUSBY, J. This is an action in ejectment and to quiet title to 40 acres of the surplus allotment of Blanche L. Gentry, nee Fronkier, a one-eighth blood Osage Indian. The mineral rights under said lands are not involved. The allottee was born October 26, 1897. While still a minor her guardian sold the land in question through guardianship sale in the county court of Osage county. She reached 21 years of age October 26, 1918. The Secretary of the Interior of the United States granted her a competency certificate thereafter on August 9, 1919. She died September 8, 1921, when about 24 years of age. This suit was filed March 7, 1925, by her heirs to cancel the deed executed by her guardian on April 12, 1910, and to obtain possession of the surface of the 40 acres of land which now appear to be a part of the town site of Burbank, Okla. The grantee named in the guardian's deed entered into possession of the lands involved at the time of the execution of said deed, and he or his grantees have remained in possession since. Lasting and valuable improvements have been made on said lands by the defendants. At the close of the trial in the district court, judgment was rendered for defendants below, defendants in error herein. The parties will be referred to as they appeared in the trial court.

On October 8, 1909, Simon Fronkier, father and guardian of Blanche L. Fronkier, made application under provisions of Acts of Congress approved March 3, 1909, to sell the lands in question. He agreed to abide by rules and regulations and with the orders of the Secretary of the Interior. On October 16, 1909, Hugh Pitzer, Superintendent of the Osage Indian Agency at Pawhuska, transmitted this application to the Secretary of the Interior, with recommendation that "application be approved and the land sold in such manner as the Department may direct." On October 28,

1909, J. George Wright, Commissioner to the Five Civilized Tribes, at Muskogee, forwarded a communication to the Secretary of the Interior at Washington, with reference to said sale, stating that he had ascertained "that the land is needed for town-site purposes," and further stating:

"I, therefore, respectfully recommend that authority be granted said guardian to dispose of the 40 acres described belonging to said minor, the sale to be made through and under the supervision of the probate court of Osage county, subject to the approval of the Secretary of the Interior."

On November 6, 1909, F. H. Abbott, Acting Commissioner of Indian Affairs at Washington, transmitted to the Secretary of the Interior the application of Simon Fronkier, with the notation, "all the papers in the case are transmitted herewith," and with the further statement:

"It is recommended that authority be granted the legal guardian to dispose of the lands described in the application to the highest and best bidder, for cash, after advertisement as required by the statutes of Oklahoma for the sale of the lands of a minor, not less than 30 days, the sale to be subject to the approval of the probate court of Osage county, the deed to conform to the requirements of this office and to be subject to the approval of the Secretary of the Interior; in all other respects, the sale to conform to the approved regulations governing the sale of Osage surplus lands, the proceeds to be disposed of in such manner as the Commissioner of Indian Affairs may direct."

On February 17, 1910, Hugh Pitzer, Superintendent of the Osage Indian Agency at Pawhuska, wrote the Commissioner of Indian Affairs at Washington as follows:

"Sir: Referring to office letter under above subject and reference dated November 15, 1909, I have the honor to transmit herewith guardian deed executed by Simon Fronkier, guardian of Blanche L. Fronkier, conveying (land described) to Ret Millard, the consideration being $1,200.

"There are also enclosed herewith certified copies of the petition to sell real estate, decree of sale of real estate, affidavit of publication of notice of sale, additional bond in the sum of $1,000, return of sale of real estate, order for hearing return of said sale, of real estate, notice of hearing of said return of sale of said real estate, and proof of said notice and the order confirming said sale.

"As this sale was apparently conducted in a fair and impartial manner, as I consider the consideration mentioned in said deed a fair consideration for said tract of land, I recommend that the guardian's deed be approved."

On March 25, 1910, thereafter, the guardian's deed was duly approved by the Secretary of the Interior, conveying the lands in question to Ret Millard, and by mesne conveyances title to the same was transferred to the various defendants herein. On March 3, 1909, Congress passed an act, making it possible for the lands of the members of the Osage Tribe to be sold under such rules and regulations as prescribed by the Secretary of the Interior. The applicable portion of that act reads as follows:

"An act authorizing the Secretary of the Interior to sell part or all of the surplus lands of members of the Kaw or Kansas and Osage Tribes of Indians in Oklahoma, and for other purposes.

"Be it enacted by the Senate and House of Representatives of the United States of America, in Congress assembled, that the Secretary of the Interior be, and he hereby is, authorized and empowered, upon application, to sell, under such rules and regulations as he may prescribe, part or all of the surplus lands of any member of the Kaw or Kansas and Osage Tribes of Indians in Oklahoma; provided, that the sales of the Osage lands shall be subject to the reserved rights of the tribe in the oil, gas, and other minerals."

Pursuant to the authority granted in said act, certain rules and regulations were prescribed and promulgated by the Secretary of the Interior, setting forth the manner in which the sale of surplus lands of minor Osages should be made. One of these rules applicable to this case is section 3 of the rules and regulations approved February 9, 1910, which reads as follows:

"Section 3. The sale of surplus lands of minor Osages shall conform to the requirements of the laws of Oklahoma pertaining to the sale of lands of minors in the following particulars: The sale of the lands shall be authorized by the county court of the county where the lands are situated, the manner of publication of notice of sale, provided that not less than 30 days' notice shall be given, and the sale shall be subject to confirmation and approval by the county court. In all other respects the sale shall conform to the requirements of these regulations, namely, the guardian shall first obtain the consent of the Secretary of the Interior to make the sale, the deed shall be executed on an approved form and shall be subject to the Secretary's approval, and the proceeds of the sale shall be subject

to the direction of the Commissioner of Indian Affairs."

This brings us to a consideration of this question: Did the guardian's deed to Ret Millard, approved by the Secretary of the Interior March 25, 1910, and delivered to the grantee May 5, 1910, vest legal and equitable title to the surface of the 40 acres of lands in question? The procedure followed in the county court is not attacked by the plaintiffs.

The gist of the plaintiffs' contention seems to be set forth in their brief in the following paragraph:

"We raise no question as to the power of Congress to authorize the sale of such lands as named in the Act of Congress of March 3, 1909, where Congress prescribes the legal procedure, but we do question the sufficiency of this act for the reason that it would operate to deprive the citizen of his property without due process of law, no 'due process' or procedure being prescribed by the Act of Congress, and Congress being without right to delegate its constitutional power to the Secretary of the Interior to legislate by rules and regulations."

They argue further that even though the Secretary of the Interior had authority to sell the lands in question, still, he could not delegate this authority to Simon Fronkier, the guardian, through any proceedings in the county court of Osage county, nor could the Secretary of the Interior adopt or ratify the sale of lands so as to validate the guardian's deed. With this contention we cannot agree. The act of Congress, supra, provided for the selling of "part or all of the surplus lands of any of the Osage Tribe in Oklahoma." Congress by this law did not limit the land to be sold to that of adult members of the Osage Tribe, but the provision is all inclusive, and says that part or all of the surplus lands of any member of the tribe may be sold. Minors are included in all general laws unless they are specifically excepted therefrom. In re Shreve et al. (N. J. Eq.) 103 Atl. 683; Johnson v. Kennecott Copper Corporation, 5 Alaska, 571.

Therefore, minor Osage Indians were included in the terms of this statute the same as adult members. Congress did not see fit to go into all the details with reference to the plan and procedure of selling the land of the members of the Osage Tribe, but Congress did provide in the act, supra, that the Secretary of the Interior was authorized and empowered, upon application, to sell the land under such rules and regulations as he might prescribe. Congress at an early date provided for the performing of the duties of various departments of state by promulgating a general law for such situations as in the case at bar in the following act:

"The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use and preservation of the records, papers and property appertaining to it." (USCA title 5, sec. 22.)

Courts have construed that the regulations promulgated under this statute for the performance of the business of the department in question have the force of law. International Railway v. Davidson (C. C. A. 2d Cir.) 273 Fed. 153; Haas v. Henkel, 216 U. S. 462, 54 L. Ed. 469, loc. cit. 578; United States v. Macdaniel, 7 Pet. 1, 14, 15, 8 L. Ed. 587; March Oil Co. v. Lee, 113 Okla. 242, 241 P. 804.

The Secretary of the Interior acting under the authority delegated to him by Congress promulgated certain rules and regulations, including the portion with reference to the sale of surplus lands of Osage Indians as set out in section 3, supra. In the case at bar, this plan of procedure was followed in every detail. Congress recognized that the Secretary of the Interior could not go personally to Pawhuska, Okla., and conduct the sale of the lands belonging to the allottees, and for that reason gave him the right to provide the method of sale of the lands. The acts of the guardian through and with the approval of the county court of Osage county, in selling the minor's lands as provided by the laws of the state of Oklahoma, which acts and procedure were approved by the Secretary of the Interior, were just as binding as if he had personally conducted the sale himself. The county court was simply acting as a federal agency in approving the proceedings of said sale.

The record in this case shows that all the parties concerned in the sale and purchase of this land sought to follow in all respects the acts of Congress governing the Osage Indians; the laws of the state of Oklahoma made applicable to the transaction; the rules and regulations of the Secretary of the Interior, and the governmental policy with reference to the Osage allottees; there was no effort to sell this land or acquire the title thereto in viola-

tion of either the letter or the spirit of the acts of Congress governing Osage allottees and their property.

For this reason we hold that the guardian's deed approved by the Secretary of the Interior, conveying the lands in question to Ret Millard on May 5, 1910, vested legal and equitable title of the lands in question in Ret Millard and through said Millard to the various defendants herein.

The defendants herein also contend that the plaintiff could not recover because of laches, and because of the statute of limitation. Inasmuch as we have already held that the plaintiffs were not entitled to recover, it is not necessary in this case to discuss this further question. The judgment of the trial court is affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, BAYLESS, and WELCH, JJ., concur.